**NOT FOR PUBLICATION**

```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY


JOHN BRANDT,                    :
                                :    Civil Action No. 11-2627 (FLW)
          Plaintiff,            :
                                :
     v.                         :    OPINION
                                :
LAWRENCE ROSSI, et al.,         :
                                :
          Defendants.           :
```

**APPEARANCES:**

Plaintiff pro se
John Brandt
Anne Klein Forensic Center
West Trenton, NJ  08628

**WOLFSON**, District Judge

Plaintiff John Brandt, a civilly-committed mental patient confined at Anne Klein Forensic Center in West Trenton, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence, this Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Amended Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint, or from sources of which this Court may take judicial notice,[1] and are accepted as true for purposes of this review.

In 2001, Plaintiff was charged, in two indictments, with burglary, criminal mischief, and criminal trespass.  He was subsequently diagnosed with bipolar disorder, manic type with psychotic features, and with an antisocial personality disorder.  In 2003, the trial judge found him competent to stand trial on both indictments and not guilty by reason of insanity.  Thereafter, he was involuntarily committed and placed on Krol[2] status.  He remains committed and on Krol status as the result of

---

[1] This Court will take judicial notice of the dockets of this and other courts in cases related to this Amended Complaint. See Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

[2] See State v. Krol, 68 N.J. 236, 344 A.2d 289 (1975) (detailing periodic review procedures for persons found not guilty by reason of insanity and committed for mental health treatment); N.J.S.A. 2C:4-8(b)(3) ("If the court finds that the defendant cannot be released with or without supervision or conditions without posing a danger to the community or to himself, it shall commit the defendant to a mental health facility approved for this purpose by the Commissioner of Human Services to be treated as a person civilly committed.").

the required periodic reviews.  See generally Brandt v. McQuaide, 2010 WL 5343233 (D.N.J. Dec. 20, 2010) and In the Matter of the Commitment of J.B., 2009 WL 1658494 (N.J.Super.App.Div. June 16, 2009).

Before this Court, Plaintiff alleges that he was transferred to Trenton Psychiatric Hospital on November 30, 2010, and was placed on the Raycroft-E2 unit, under the supervision of Defendant Program Coordinator Jacqueline Porter Stewart. Plaintiff alleges that Defendant Stewart did not want Plaintiff on her unit, because of his prior civil rights litigation.

Plaintiff alleges that, on December 22, 2010, Defendant Maria Bella Sanchez, a housekeeper, told two other patients, Wiley Smith and Mack Tyler, that Plaintiff had "snitched" on her about selling narcotics to them.  Plaintiff alleges that Defendant Sanchez told Smith and Tyler that she wanted something done to Plaintiff and to have him moved off the unit.  Plaintiff alleges that a third patient, James Edwards, told him about this conversation at approximately 11:00 a.m. on December 22nd, after which Plaintiff informed Defendant Sanchez that he had not "snitched" on her and that she should stop trying to get Smith and Tyler to attack him.  Thereafter, Tyler and Smith directly threatened Plaintiff.

Plaintiff alleges that he immediately told Defendant Stewart that Tyler and Smith were planning to attack him because of the

false allegations made by Defendant Sanchez.  Plaintiff alleges that this conversation was witnessed by the Treatment Team social worker Nadine Klass.  Plaintiff alleges that Defendant Stewart notified administrative officials[3] of the threats by e-mail, but took no other measures to protect Plaintiff.  Plaintiff describes that the two threatening patients, Smith and Tyler, had a long history of violence and assaults on other patients.

Plaintiff alleges that at 7:00 p.m. the same day, the two threatening patients, Smith and Tyler, told the duty nurse Defendant Ms. Sucharitha Ready that they were going to attack Plaintiff if he was not taken off the unit.  Ms. Ready informed the nursing supervisors Defendants Pierre Nigil and Kephe Carter, and the on-call psychiatrist Defendant Dr. Waverly Andrews of the threats.  Plaintiff alleges that these four Defendants failed to take any action to protect Plaintiff.

Plaintiff alleges that at 8:00 p.m. that same evening, the patients Tyler and Smith entered his room.  Plaintiff alleges that another patient restrained Smith, but that Tyler attacked Plaintiff, injuring him and breaking his finger.

---

[3] Specifically, Plaintiff alleges that Defendant Stewart e-mailed Defendants Medical Director Lawrence Rossi, Chief Psychiatrist Evan Feibusch, Chief Executive Officer Teresa McQuaide, Building Administrator Lee Acuff, Building Administrator Maria Champagne, and Nursing Supervisor Dawn Amentie, but that they failed to take any action, or took inadequate action, to protect him.

Plaintiff asserts that he has been treated differently from other patients because of his litigation history. Plaintiff seeks compensatory damages as well as declaratory and injunctive relief.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary;

the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... . Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held that the Twombly pleading standard applies in § 1983 civil rights actions. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

6

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'–'that the pleader is entitled to relief.'" This "plausibility" determination will be "a

7

    context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

    Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

    A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting

8

under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV. ANALYSIS

A. The Failure-to-Protect Claim

Plaintiff alleges that all defendants violated his Fourteenth Amendment right not to be deprived of liberty without due process when they acted with willful disregard for his safety.

"Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." Foucha v. Louisiana, 504 U.S. 71, 79 (1992) (citing Jones v. United States, 463 U.S. 354, 368 (1983); Jackson v. Indiana, 406 U.S. 715, 738 (1972)). See also Youngberg v. Romeo, 457 U.S. 307, 324 (1982) and Jackson v. Indiana, 406 U.S. 715, 738 (1972)).

In Youngberg v. Romeo, 457 U.S. 307 (1982) the Supreme Court evaluated the substantive Fourteenth Amendment liberty interests retained by civilly-committed mental patients. The Court held that involuntarily-committed mentally retarded persons retain substantive liberty interests in adequate food, shelter, clothing, and medical care, Youngberg, 457 U.S. at 315, as well as in safety, freedom of movement, minimally adequate or

9

reasonable training to ensure safety, and freedom from undue restraint, id. at 317-19.

These interests, however, are not absolute. Youngberg, 457 U.S. at 319-20. "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." Id. at 320 (quoting Poe v. Ullman, 367 U.S. 497, 542 (1961)(Harlan, J., dissenting)). In seeking this balance, a court must weigh "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty." Id. In Youngberg, balancing the interests of the State against the rights of involuntarily committed mentally retarded persons to reasonable conditions of safety and freedom from unreasonable restraints, the Court adopted the standard advocated by a concurring judge, below, that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." 487 U.S. at 321 (quoting 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, C.J., concurring)). Thus, even when treatment decisions violate a protected liberty interest, such decisions made by a qualified professional are presumptively valid;

> liability may be imposed only when the decision by the
> professional is such a substantial departure from

10

> accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.  In an action for damages against a professional in his individual capacity, however, the professional will not be liable if he was unable to satisfy his normal professional standards because of budgetary constraints; in such a situation, good-faith immunity would bar liability.

457 U.S. at 323 (footnote omitted).

    a.   The Claim Against Maria Bella Sanchez

The due process claim against housekeeper Maria Bella Sanchez is based upon her allegedly false statement to patients Smith and Tyler, that Plaintiff had "snitched" on her, and her request that they do "something" to Plaintiff.

The Court of Appeals for the Third Circuit has held that, even after Youngberg, nonprofessional employees who provide care for involuntarily institutionalized mentally retarded persons are subject only to a "deliberate indifference" standard.  Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990).  "The deliberate indifference standard requires a showing, in cases alleging that a state actor failed to provide adequate protection, that the state actor was recklessly indifferent, grossly negligent, or deliberately or intentionally indifferent."  Id. at 1145 (citations omitted).

The allegations of the Amended Complaint are sufficient to permit this claim to proceed.

     b.    <u>The Claim Against All Other Defendants</u>

The claim against all other defendants, all of whom are described as mental health professionals, is based upon their failure to take any action to protect Plaintiff against threats made by other patients with a history of violent behavior. Plaintiff alleges that this failure to act was a violation of the institution's own policies.

The allegation of complete failure to protect Plaintiff in the face of credible threats of violence is sufficient to state a claim.

B.    <u>The Retaliation Claim</u>

Plaintiff alleges that Defendant Jacqueline Porter Stewart retaliated against him, because of his litigation history, by failing to protect him and by failing to take any remedial actions against the patients who assaulted him.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." <u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir. 1990). To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state

actor's decision to take adverse action. <u>Rauser v. Horn</u>, 2001 WL 185120 (3d Cir. 2001) (quoting <u>Allah</u>, 229 F.3d at 225). <u>See also</u> <u>Anderson v. Davila</u>, 125 F.3d 148, 160 (3d Cir. 1997) (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977)); <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 386-99 (6th Cir. 1999), <u>cited with approval in</u> <u>Allah</u>, 229 F.3d at 225.

All citizens have a right under the First Amendment to petition the courts for redress of grievances; retaliation for exercise of that right is an actionable constitutional tort. <u>See</u>, <u>e.g.</u>, <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 (3d Cir. 1988); <u>Goldhaber v. Higgins</u>, 576 F.Supp.2d 694 (W.D.Pa. 2007). Thus, Plaintiff has adequately alleged that he engaged in a protected activity.

In addition, the Amended Complaint adequately alleges that Plaintiff's litigation history was a motivating factor in Defendant Stewart's behavior toward him. However, with respect to the element of a retaliation claim that the plaintiff must have suffered adverse action sufficient to deter a person of ordinary firmness from exercising his rights, the Amended Complaint states a claim only with respect to Defendant Stewart's actions in exposing Plaintiff to the risk of assault. To the extent Plaintiff rests his retaliation claim on Defendant Stewart's failure to take action against Smith and Tyler after the assault, it cannot be said that such behavior would be

13

sufficient to deter a person of ordinary firmness from exercising his rights. Accordingly, this claim may proceed only on the theory that Defendant Stewart retaliated against Plaintiff by knowingly exposing him to the risk of assault.

C.  The Equal Protection Claim

Finally, Plaintiff alleges that Defendant Stewart violated his Fourteenth Amendment right to equal protection by treating him differently from other similarly situated patients because of his litigation history.

The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

It is well settled that the Equal Protection Clause "protect[s] persons, not groups," Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995) (emphasis omitted), and that the Clause's protections apply to administrative as well as legislative acts, see, e.g., Raymond v. Chicago Union Traction Co., 207 U.S. 20, 35-36 (1907). Thus, in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), the Supreme Court recognized that an equal protection claim can in some circumstances be sustained, even if the plaintiff has not alleged class-based discrimination, but instead has alleged that he has been irrationally singled out as a "class of one." To proceed on such a claim, the plaintiff must allege that he has been

14

"intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id.  "[A]t the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006).

However, the Court of Appeals for the Third Circuit has held that "'[a] pure or generic retaliation claim [] simply does not implicate the Equal Protection Clause.'"  Thomas v. Independence Twp., 463 F.3d 285, 298 n.6 (3d Cir. 2006) (citations omitted).  Plaintiff's claim here is a pure, generic retaliation claim, and thus fails to state a claim for violation of the Equal Protection Clause.

## V. CONCLUSION

For the reasons set forth above, the Amended Complaint may proceed in part. The failure to protect claims under the Fourteenth Amendment may proceed against all defendants. Plaintiff's retaliation claim will be dismissed in part, with prejudice, and Plaintiff's Equal Protection Claim will be dismissed, with prejudice, for failure to state a claim. It does not appear that Plaintiff could cure the defects in the dismissed claims. Accordingly, he will not be granted leave to further amend.

An appropriate order follows.

s/Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated: February 2, 2012